GReen, J.
delivered the opinion of the court.
This is an action on the case, to recover the value of a negro boy, who was killed by the overseer of the plaintiff in error, whilst inflicting punishment for an'offence.
Thompson, as guardian of some minors, hired the boy Harry to Puryear for the year 1842. The negro was employed to work in Puiyear’s factory, where one Newcomb was his manager and overseer. Some time in July a difficulty occurred between the negro and Newcomb, when Newcomb attempted to chastise the negro, who runaway, and did not come home until the next Monday morning. About nine o’clock, Monday morning, Puryear had the negro tied and commenced whipping him with a cowhide, and after striking him eight or ten *398 licks, he handed the cowhide to Newcomb, telling him “to give the negro a good whipping — be sure to humble him before yon let him down, and then put him to work, for he has had his own way long enough.” Newcomb took the cowhide and commenced whipping the negro, when Puryear left and went to a place in the neighborhood. Several hours after Puryear left the factory, he was informed that the boy Harry was dead. He immediately went home, expressing much regret, and on his way met Newcomb, who admitted the negro was dead, and said “he had whipped the negro too much, and was sorry for it.” The negro was found lying in the factory dead; and appeared to have been severely whipped, and there were bruises on his head and neck, as though they had been made by a piece of timber which lay near, three inches wide at one end, and tapering to the other end, and upwards of an inch thick. New-comb, previously to this transaction, had treated the negroes humanely, and had a'good character.
The court charged the jury in substance, that an overseer for hire, was to be regarded-as a servant; that a master was responsible in many cases, for the acts of his servants, but that he was not responsible for the torts of the servant, committed without his authority; that it is lawful to chastise a slave, but that the hirer of such slave is bound to use ordinary care and diligence in the infliction of such chastisement, and that his responsibility is the same, whether he inflict the punishment himself, or trust his overseer to inflict it; “that if a hirer order his servant or overseer to punish a slave, until the slave be humbled, and then put him to work, and the overseer is to decide when the slave is humbled, although the master may indicate, by handing a cowhide to the overseer, that the cowhide is to be the instrument of correction, yet if the overseer begin the punishment with the cowhide, and in its progress suffer his passions, to get the better of his judgment, and even lay aside the instrument of correction, intended by the master, and use another instrument, which may produce death, and which the jury may believe did produce death, still the hirer would be answerable to the owner for the value of the slave.”
The counsel for the defendant, requested the court to charge *399 the jury, “That if they believe the defendant tied up the negro and commenced whipping him, and after striking a few licks with a cowhide, handed the same to the overseer, and told him to whip the negro until he was humbled, and then put him to work, and if they further believed, that so soon as the defendant left the place of punishment, the overseer abandoned all intention of complying with his master’s orders, and undertook to gratify his own malice and spite against the negro, and in the gratification of this malice killed him, then the defendant would not be liable.”
The court declined giving the charge asked for, on the ground, that it was an abstract proposition, and that there was no evidence to which a charge of this character would apply.
The jury found a verdict for the plaintiff, and the defendant moved for a new trial, which being refused by the court, he appealed to this court.
No principle of the common law, is better settled than that ..a master is liable for the injuries done to others by his servant’s negligent conduct while in his employment. And it is equally well settled, that he is not liable for his servant’s torts or wilful acts done without his Authority .Story on Agency, 474, same, 470 note, 475 note: Story on Bailments, 266: 7 Yerg. R. 367. And it can make no difference, whether such wilful act of the servant be done while he is in the performance of some lawful service required by the master, orbe entirely disconnected with such service. As if in driving the master’s carriage, by his order, along the highway, he drives so negligently as to injure another person, the master is liable;'but if while thus driving, the servant wilfully, and contrary to his master’s direction, so drive as to injure another, intending to inflict such punishment, the master is not liable. So in the case before us, if the overseer ih pursuance of the defendant’s directions, intended only to chastise the negro until he should be humbled, and in the attainment of that object, so negligently and recklessly inflicted blows, and so used instruments of punishment, as to take the life of the negro, the defendant below is liable for the injury. But if he abandoned the purpose to chastise until the negro should be humbled, and employed instruments of torture to gratify his *400 malice, intending to kill the negro, in such case the defendant would not be liable.
We think these propositions were not placed before the jury, by the charge of His Honor, so as to leave them free to determine from the evidence, whether the blows by which the negro was killed, were intended by Newcomb to take his life, or whether in his purpose to humble the slave, at all events, he grew negligent and reckless of the means he employed, and thereby killed him, not having intended that result.
Reverse the judgment, and remand the case for another trial.